## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE:   RENELL MANUEL                       CASE NO. 15-12283

DEBTOR                       SECTION A

CHAPTER 13

## OBJECTION TO PROOF OF CLAIMS FILED BY CITIFINANCIAL SERVICING, LLC., IN THE AMOUNT OF $137,084.69,  AND DESIGNATED AS CLAIM NUMBER 10 ON THE CLAIMS REGISTER, AND BAYVIEW LOAN SERVICING, IN THE AMOUNT OF $136,530.74, AND DESIGNATED AS CLAIM NUMBER 11 ON THE CLAIMS REGISTER

**NOW** into court, through undersigned counsel, comes the debtor who objects to the proof of claim listed above, and who represents as follows:

1.

The basis of this objection is that the claims are duplicates. Both claims are attached. Labeled as Exhibit A is the claim objected to filed by Citifinancial, and Exhibit B, the claim filed by Bayview Loan Servicing. The claims were filed four days apart. Citifinancial's claim lists a balance of $137,084.69. Bayview's claim lists a balance of $136,530.74. Both claims reference as collateral debtor's property located at 2908 Yorktowne Drive, Laplace, LA 70068. Citifinancial lists arrearages of $1,094.33. Bayview's claim does not.

2.

Of biggest concern is the difference in the interest rates on the note. Citifinancial's proof of claim lists an interest rate of 6% fixed. Bayview's claim lists an interest rate of 9% variable.

3.

You can see from the documents attached that there is significant confusion with these creditors as to who holds the note, whether or not arrearages are owed, and the interest rate.

4.

By separate correspondence, undersigned counsel is sending letters to both of these parties, asking them to immediately reconcile their issues, to correct the discrepancies, and withdraw the proof of claim that is incorrect (specifically the claim filed by a creditor who no longer has a right to collect on this debt).

5.

Failing correction by these creditors prior to the hearing date on this matter, your debtor is requesting not only that the court decide which claim to disallow, but that the award of attorney's fees be considered.

**WHEREFORE,** your debtor prays that this matter be set for hearing, and after all due proceedings be had, that the court decide which of these claims to disallow, and for such other relief as is just and equitable.

Respectfully Submitted:

_____
Phillip D. Rubins (#17779)
Attorney at Law
4051 Veterans Memorial Blvd
Suite 305
Metairie, LA 70002
(504) 454-7763

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:        RENELL MANUEL                           CASE NO. 15-12283

              DEBTOR                                  SECTION A

                                                     CHAPTER 13


## VERIFICATION

I, Renell Manuel, do hereby make solemn oath that I have read the foregoing

**OBJECTION TO PROOF OF CLAIMS FILED BY CITIFINANCIAL SERVICING,**

**LLC., IN THE AMOUNT OF $137,084.69,  AND DESIGNATED AS CLAIM NUMBER 10**

**ON THE CLAIMS REGISTER, AND BAYVIEW LOAN SERVICING, IN THE**

**AMOUNT OF $136,530.74, AND DESIGNATED AS CLAIM NUMBER 11 ON THE**

**CLAIMS REGISTER**, and it is true and correct to the best of my knowledge and belief.

RENELL MANUEL

EXHIBIT

A

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Renell Manuel |
| Debtor 2 | |
| (Spouse, if filing) | |

United States Bankruptcy Court for the: Eastern District of Louisiana (New Orleans)
(State)

Case number 15-12283

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:  Identify the Claim

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | CitiFinancial Servicing LLC |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| | | |
|---|---|---|
| 2. | **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

CitiFinancial Servicing LLC

Name
P.O. Box 6043

Number   Street

Sioux Falls      SD      57117-6043
City         State      Zip Code

Contact phone  (888)701-6280

Contact email  Citi.POC@citi.com     CitiAssist4Trustee@citi.com

**Where should payments to the creditor be sent? (if different)**

CitiFinancial Servicing LLC

Name
P.O. Box 70919

Number   Street
Charlotte      NC      28272-0919
City         State      Zip Code

Contact phone  (888)701-6280

Contact email  Citi.POC@citi.com     CitiAssist4Trustee@citi.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

| | | |
|---|---|---|
| 4. | **Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____<br> MM / DD / YYYY |

| | | |
|---|---|---|
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? |

241
Page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|-------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor.
    1   2   5   3

**7. How much is the claim?**  $ 137,084.69

**Does this amount include interest or other charges?**

☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Mortgage loan

**9. Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.

**Nature of property:**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe   2908 Yorktowne Dr, Laplace, LA 70068

**Basis for perfection:**   Security Instrument

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $

**Amount of the claim that is secured:**   $  137,084.69

**Amount of the claim that is unsecured:**   $

(The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $  1,094.33

**Annual Interest Rate** (when case was filed) 6.00000   %

☒ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.   $

**11. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property.

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
| --- | --- | --- | --- |
| | | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |

* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   01/08/2016
                   MM / DD / YYYY

/s/ Zimbalis Crawford
        Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Zimbalis | | Crawford |
| --- | --- | --- | --- |
| | First Name | Middle Name | Last Name |
| Title | Bankruptcy Specialist III | | |
| Company | CitiFinancial Servicing LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 6043 | | |
| | Number        Street | | |
| | Sioux Falls | SD | 57117-6043 |
| | City | State | ZIP Code |
| Contact phone | (888)701-6280 | Email | Citi.POC@citi.com CitiAssist4Trustee@citi.com |

This proof of claim is being submitted with copies of supporting documentation available to the Creditor as of the filing. Unless this claim is later withdrawn, further documentation will be provided in an amended proof of claim to the extent necessary to more fully document the claim. If such amended proof of claim is not filed by the date that is 60 days after filing of this proof of claim, Creditor will advise the applicable Chapter 13 Trustee and United States Trustee of the status of the amended Proof of Claim

## Mortgage Proof of Claim Attachment

**(12/15)**

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number | 15-12283 | Principal balance: | $135,877.13 | Principal & interest due: | $0.00 | Principal & interest: | $1,084.90 |
| Debtor 1: | Renell Manuel | Interest due: | $113.23 | Prepetition fees due: | $1,094.33 | Monthly escrow: | $0.00 |
| Debtor 2: | | Fees, costs due: | $1,094.33 | Escrow deficiency for funds advanced: | $0.00 | Private mortgage Insurance: | $0.00 |
| Last 4 digits to identify: | 1  2  5  3 | Other: | $0.00 | Other: | $0.00 | Optional payment Insurance: | $0.00 |
| Creditor: | CitiFinancial Servicing LLC | Other: | $0.00 | Other: | $0.00 | Total monthly payment: | $1,084.90 |
| Servicer: | | Other: | $0.00 | Projected escrow shortage: | $0.00 | | |
| Fixed accrual/daily simple interest/other: | Daily Simple Interest | Other: | $0.00 | Less funds on hand: | $0.00 | | |
| | | Escrow deficiency for funds advanced: | $0.00 | Total prepetition arrearage: | $1,094.33 | | |
| | | Less total funds on hand: | $0.00 | | | | |
| | | Total debt: | $137,084.69 | | | | |

**Mortgage Proof of Claim Attachment** (12/15)

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Part 5: Loan Payment History from First Date of Default** | | | | | | | | | | | | | | | | | |
| | | **Account Activity** | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| 4/28/2015 | $ 1,084.90 | $ - | $ - | monthly payment | 5/28/2015 | $ (5.10) | $ - | $ - | $ - | $ - | $ - | $ 137,504.11 | $ - | $ - | $ - | $ - |
| 5/26/2015 | $ - | $ - | $ (1,094.33) | Tax advance | 5/28/2015 | $ (5.10) | $ - | $ - | $ - | $ (1,094.33) | $ - | $ 137,504.11 | $ - | $ - | $ (1,094.33) | $ - |
| 5/28/2015 | $ 1,084.90 | $ - | $ - | monthly payment | 5/28/2015 | $ 1,079.80 | $ - | $ - | $ - | $ - | $ - | $ 137,504.11 | $ - | $ - | $ (1,094.33) | $ - |
| 5/30/2015 | $ - | $ 1,084.90 | $ - | regular payment | 6/28/2015 | $ (5.10) | $ 317.92 | $ 766.98 | $ - | $ - | $ - | $ 137,186.19 | $ - | $ - | $ (1,094.33) | $ - |
| 6/28/2015 | $ 1,084.90 | $ - | $ - | monthly payment | 6/28/2015 | $ 1,079.80 | $ - | $ - | $ - | $ - | $ - | $ 137,186.19 | $ - | $ - | $ (1,094.33) | $ - |
| 6/30/2015 | $ - | $ 1,090.00 | $ - | regular payment | 7/28/2015 | $ (10.20) | $ 434.18 | $ 655.82 | $ - | $ - | $ - | $ 136,752.01 | $ - | $ - | $ (1,094.33) | $ - |
| 7/28/2015 | $ 1,084.90 | $ - | $ - | monthly payment | 7/28/2015 | $ 1,074.70 | $ - | $ - | $ - | $ - | $ - | $ 136,752.01 | $ - | $ - | $ (1,094.33) | $ - |
| 7/31/2015 | $ - | $ 1,090.00 | $ - | regular payment | 8/28/2015 | $ (15.30) | $ 436.35 | $ 653.65 | $ - | $ - | $ - | $ 136,315.66 | $ - | $ - | $ (1,094.33) | $ - |
| 8/28/2015 | $ 1,084.90 | $ - | $ - | monthly payment | 8/28/2015 | $ 1,069.60 | $ - | $ - | $ - | $ - | $ - | $ 136,315.66 | $ - | $ - | $ (1,094.33) | $ - |
| 8/31/2015 | $ - | $ 1,090.00 | $ - | regular payment | 9/28/2015 | $ - | $ 438.53 | $ 651.47 | $ - | $ - | $ - | $ 135,877.13 | $ - | $ - | $ (1,094.33) | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

**Disclosure Statement, Note and Security Agreement** Page 6 of 14

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No |
| --- | --- | --- |
| RENELL KING MANUEL<br>ERROL FLINN MANUEL<br>2908 YORKTOWNE DR<br>LAPLACE LA 70068 | CITIFINANCIAL CONSUMER<br>SERVICES, INC.<br>1512 W AIRLINE HWY<br>LAPLACE    LA   70068 | Date of Loan<br>12/22/2006 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate.<br><br>10.25 % | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower.<br><br>$ 296,400.74 | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf.<br><br>$ 133,172.86 | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled.<br>$  429,573.60 |
| --- | --- | --- | --- |

Payment Schedule:

| Number of Payments | Amount of Payments * | When Payments Are Due |
| --- | --- | --- |
| 360 | $   1,193.26 | MONTHLY BEGINNING  01/28/2007 |
| | $ | |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

Security: If checked, Borrower is giving a security interest in:
☐ Motor Vehicle   ☐ Mobile Home
☒ Real Property   ☐ Other

Late Charge: If any payment is more than 10  days late, Borrower will be charged a late fee of   5.0   % of the amount of the payment due.

Prepayment: If Borrower pays off early, Borrower:
☐ will not ☒ may  have to pay a penalty; and will not be entitled to a refund of part of the finance charge.

\* Does not include any insurance premium.

Additional Information:

| Total amount of first month's payment including insurance premiums, if any.<br>$ 1,193.26 | PRINCIPAL<br>$ 137,168.05 | POINTS<br>$   3,995.19 | DATE CHARGES BEGIN<br>12/28/2006 | DATE CHARGES BEGIN<br>12/28/2006 |
| --- | --- | --- | --- | --- |

**Required Insurance Disclosure:**

If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid . The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less.

If the collateral securing the credit is a motor vehicle (including a recreational vehicle, boat, or movable mobile home), Borrower must provide collision and comprehensive casualty insurance in an amount sufficient to satisfy the unpaid balance of the loan or equal to the value of the collateral, whichever is less. All such policies and renewals thereof must name Lender as loss payee and must be maintained by Borrower, until the credit is repaid in full. Borrower may obtain a new insurance policy or provide an existing policy from any insurer that is acceptable to Lender. If Borrower obtains the Automobile Physical Damage Insurance at Lender's office, Borrower acknowledges that such insurance (1) may cost more than insurance that is available from another insurer, (2) will only protect Lender's interest in the collateral and does not protect Borrower's interest, and (3) does not protect Borrower from claims by other persons.

Any such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

I/We request the following insurance:

| Cost Premium: | Insurance Type: | Insurance Term (in mos) | |
| --- | --- | --- | --- |
| $      NONE | Modified Automobile | _Renell King Manuel_ | _12/22/06_ |
| $ | Single Interest | First Borrower's Signature | Date |
| $ | | _Errol F. Manuel_ | _12/22/06_ |
| | | Second Borrower's Signature | Date |

**Optional Insurance Disclosure:**

Borrower is not required to purchase optional insurance products, such as:  Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: | | |
| --- | --- | --- | --- | --- |
| $      NONE | | | _Renell King Manuel_ | _12/22/06_ |
| $      NONE | | | First Borrower's Signature | Date |
| $      NONE | | | _Errol F. Manuel_ | _12/22/06_ |
| | | | Second Borrower's Signature | Date |

(\* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**

Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:

(1)  the Lender's receipt of Borrower's written request for termination;
(2)  on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3)  termination pursuant to the provisions of the insurance certificate;
(4)  payment in full of Borrower's Loan;
(5)  death of Borrower.

Borrower's Initials _RM_  _EM_

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, which includes any Points shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the Rate of Interest of  09.8964 % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the  N/A  month anniversary of the Date of Loan shown above, the Rate of Interest applicable to the remaining unpaid principal balance shall decrease to N/A  % per annum.

Any amount shown above as Points has been paid by Borrower as fees and any amount shown above as a Buydown Fee has been paid by a party other than the Borrower as a Buydown Fee. These amounts are considered a prepaid charge and are in addition to interest calculated at the above Rate(s) of Interest. Any Points or Buydown Fee are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, prepaid Points and/or Buydown Fees will not be refundable to Borrower.

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full, unless this loan is subject to a call provision as indicated, in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) late charges and monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender, at its option, may collect interest from and after maturity upon the unpaid Principal balance at either the maximum rate permitted by the then applicable law or the Rate of Interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement.

**PREPAYMENT:** Borrower may make a full or partial prepayment of the unpaid Principal balance at any time (check applicable box):

☐ If this box is checked, Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

☒ If this box is checked, Borrower prepays the entire outstanding Principal amount of this loan during the first three (3) years from the date of the loan, Lender may charge Borrower a prepayment penalty equal to a percentage of the amount prepaid as follows: for prepayment in full within one year of the date of the loan, 3%; within two years, 2%; and within three years, 1%. Upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent payments on the loan, but may reduce the number of such payments.

Borrower understands if the terms of this paragraph provide for a prepayment penalty, such terms do not apply to a renewal or refinancing of this loan by Lender, nor to the prepayment of this loan from the proceeds of any loan made in the future by Lender to Borrower. No prepayment charge will be collected if the loan is accelerated due to Borrower's default or Lender's exercise of any due on sale clause in the Mortgage securing this obligation.

**SECURITY:** Borrower's loan is secured by a Mortgage or Deed of Trust of even date on real property which requires Lender's prior written consent to a sale or transfer of the encumbered real property located at
**2908 YORKTOWNE DR  LAPLACE, LA  70068** . See the Mortgage or Deed of Trust
for terms applicable to Lender's interest in Borrower's real property ("Property").

**INSURANCE:** If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

**NSF CHARGES:** If a check, negotiable order of withdrawal or share draft is returned for insufficient funds or insufficient credit, Lender may charge 5% of the check or $  25.00  , whichever is greater.

**LATE CHARGE:** If Borrower fails to pay any scheduled Payment within  10  days of its due date, Borrower agrees to pay a late charge of  5.0 % of the unpaid portion of the Payment due. Lender may, at its option, waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment.

**LOAN CHARGES:** If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

**DEFAULT:** Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. Borrower defaults in the performance of any terms, conditions or provisions of any mortgage or deed of trust securing the payment of this Note or any other mortgage or deed of trust on the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once. Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement. If this debt is referred for collection to an attorney not a salaried employee of the Lender, Lender shall be entitled to collect attorney's fees not to exceed 25% of the unpaid debt. Lender, at its option, may collect interest from and after the final payment date upon the then unpaid Principal amount of this Note, at (a) the maximum rate permitted by the then applicable law or (b) the Rate of Interest prevailing under this Disclosure Statement, Note and Security Agreement, as shown on page one.

**LAW THAT APPLIES:** Louisiana and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

**OTHER RIGHTS:** Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular, and references to the masculine gender may be read to apply to the feminine gender.

This Disclosure Statement, Note and Security Agreement shall be the joint, several and in solido obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors and assigns. Borrowers, endorsers, sureties and guarantors, to the extent permitted by law, severally (i) waive presentment for payment, notice of nonpayment, protest, notice of protest and diligence in bringing suit against any party hereto; (ii) consent that time of payment may be extended after maturity without notice; and (iii) waive all benefit of valuation, appraisement and homestead or other exemption laws now in force or hereafter passed, including stay of execution and condemnation. Borrowers hereby confess judgment.

Borrower's Initials _____

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

AUTHORIZATION TO USE CREDIT REPORT: By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

The following notice applies only if this box is checked. ☐

## NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

WITNESSES:                                    SIGNED:

_____              _____ (Seal)
                                              RENELL KING MANUEL          -Borrower

_____              _____ (Seal)
                                              ERROL FLINN MANUEL          -Borrower

                                              _____ (Seal)
                                                                          -Borrower

                                              CITIFINANCIAL CONSUMER SERVICES, INC.

_____              By: _____
                                                  (Name and Title)      12/22/2006 10:24:29

                                              Ne Varietur

For Identification with an Act of Mortgage passed before me this _____ 22 ND _____ day of December, 2006

                              at _LAPLACE_____, Louisiana

                              _____
                              Notary Public

                              Notary Public of Parish _ST. JOHN THE BAPTIST_, Louisiana

                              Michelle L. Sweeney N.C. #58124

SECURITY INTEREST OF NONOBLIGOR Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal) _____   _____ (Seal) _____
Signature                        Date              Signature                        Date

Eliana J Francesch, Clerk of Court
Parish of St. John the Baptist

# 0271700
Recorded On: 12/28/2006  09:46 A

When recorded, return to:
CITIFINANCIAL CONSUMER
SERVICES, INC.
1512 W AIRLINE HWY
LAPLACE        LA  70068

---

## MORTGAGE

ON THIS     22nd     day of     December                          ,  2006   , before me,

_____ , a Notary Public in and for the Parish of

_____ , State of Louisiana, and in the presence of the undersigned witnesses, appeared
RENELL KING MANUEL AND ERROL FLINN MANUEL

                                                         6912 (herein "Borrower"),
and the Mortgagee, CITIFINANCIAL CONSUMER SERVICES, INC.
a corporation organized and existing     under the laws of     Maryland              , whose
permanent mailing address is 1512 W AIRLINE HWY     LAPLACE        LA  70068
(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U. S. $   137,168.05           , with
interest on the outstanding principal balance at the rate of       9.90     percent per annum, as the same may be
modified from time to time in accordance with the note, if applicable, which indebtedness is evidenced by Borrower's
note dated 12/22/2006 paragraphed "Ne Varietur" by me, Notary, for identification herewith and delivered to Lender,
and extensions and renewals thereof (herein "Note"), which Note provides for monthly installments of principal and
interest payable each month, beginning 01/28/2007 , with the balance of the indebtedness, if not sooner paid, due and
payable on 12/28/2036 ;

TO SECURE to Lender the repayment of the indebtedness of principal and interest evidenced by the Note; the
payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this
Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby
mortgage and hypothecate to Lender the following described property located in the  Parish of
ST JOHN THE BAPTIST , State of Louisiana:

SEE ATTACHED EXHIBIT A

which has the address of     2908 YORKTOWNE DR                        LAPLACE
Louisiana  70068                (herein "Property Address");

Original(Recorded)     Copy(Branch)     Copy(Customer)          Page 1 of 5

RENELL KING MANUEL    ERROL FLINN MANUEL                          12/22/2006

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage and hypothecate the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

RENELL KING MANUEL    ERROL FLINN MANUEL    12/22/2006

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.**
Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers .** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

**Original (Recorded)    Copy (Branch)    Copy (Customer)**    Page 3 of 5

RENELL KING MANUEL    ERROL FLINN MANUEL                              12/22/2006

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may cause the Property to be seized and sold under either ordinary or executory process, with or without appraisement, to the highest bidder for cash. Borrower hereby confesses judgment in favor of Lender and any future holder of the Note in the full amount of all sums secured by this Mortgage, including, but not limited to, attorneys' fees of 25% of the sums due under the Note.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) entry of a judgment by a Court enforcing this Mortgage or (ii) issuance of a writ of seizure and sale pursuant to court order if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all cost of recordation, if any.

**21. Vendor's Lien Mortgage.** If Lender is a savings and loan association, the Note and other sums secured by this Mortgage shall be secured by a vendor's lien and privilege on and against the Property pursuant to the provisions of Louisiana Revised Statutes, Title 6, Section 833.

**22. Waiver of Homestead.** Borrower and Borrower's spouse, if any, hereby waive all right of homestead exemption in the Property.

**23. Mortgage and Conveyance Certificates.** The production of Mortgage and conveyance certificates is waived by Lender and Borrower, who release me, Notary, from all liability for non-production.

**24. Late Charge.** Borrower shall pay to Lender a late charge of  5.0  % of any monthly installment of principal and interest as provided in the Note not received by Lender within  10  days after such installment is due. The late charge shall be not less than U.S. $      0.00  and not more than U.S. $ 9,999.00  .

**25. Marital Status of Borrower.** The marital status of Borrower is:
Name(s) of spouse and/or former spouse(s):          MARRIED ONCE AND TO EACH
                                          OTHER
**26. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

RENELL KING MANUEL   ERROL FLINN MANUEL                          12/22/2006

As used in this paragraph 26, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 26, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

THUS DONE AND PASSED, on the _22nd_ day of _December_, _2006_, before me, the undersigned Notary Public, qualified in said State and Parish, and in the presence of _____
                         Thomas Williams

_____ and _Catherine J Harris_ _____, the undersigned competent witnesses who have signed with Lender, Borrower and me, the said Notary, after due reading of the whole.

Witnesses:

_____              _____
       Signature                              Renell King Manuel        -Borrower
_Thomas Williams_
       PRINTED NAME

_____              _____
       Signature                              Errol Flinn manuel        -Borrower
_Catherine J. Harris_
       PRINTED NAME

Lender                                 _____
By: _____                 Notary Public Signature
                                       Michelle L. Sweeney N.C. #58124
Kathy M Hesse
                                       _Michelle L Sweeney_____
                                              PRINTED NAME

                                       _58124_____
                                              Notary ID #

**Original(Recorded)   Copy(Branch)   Copy(Customer)**              Page 5 of 5
———————————— (Space Below This Line Reserved For Lender and Recorder) ————————————

**EXHIBIT A**

ALL THAT CERTAIN PARCEL OF LAND IN   , ST JOHN THE BAPTIST
PARISH, STATE OF LA. AS MORE FULLY DESCRIBED IN INSTRUMENT
NO 200277   ID#              , BEING KNOWN AND DESIGNATED AS LOT
41, SQUARE NO. 22  CAMBRIDGE PLACE SUBDIVISION, BEING A
RESUBDIVISION OF A PORTION OF SECTIONS 25, 26, 65 AND 66,
TOWNSHIP 11 SOUTH, RANGE 7 EAST, FILED IN PLAT BOOK COB 124 AT
FOLIO 248.  SURVEY BY J. J. KREBS AND SONS, INC.

BEING THE SAME PROPERTY CONVEYED BY FEE SIMPLE DEED FROM
ERROL FLINN MANUEL   TO ERROL FLINN MANUEL   and RENELL
KING MANUEL   , DATED 08/16/1999 RECORDED ON 08/28/1999 IN
INSTRUMENT NO 200277,  IN ST JOHN THE BAPTIST PARISH
RECORDS, STATE OF LA.

**EXHIBIT**
B

**Fill in this information to identify the case:**

Debtor 1 RENELL MANUEL

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: EASTERN DISTRICT OF LOUISIANA

Case number 15-12283

*(handwritten annotations overlaying the form)*

## Official Form 410

## Proof of Claim                                                                                     12/15

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Bayview Loan Servicing, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Bayview Loan Servicing, LLC
Name

4425 Ponce De Leon Blvd., 5th Floor
Number  Street

Coral Gables          FL          33146
City          State          ZIP Code

Contact phone 800-457-5105

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

**Where should payments to the creditor be sent? (if different)**

Name

Number  Street

City          State          Zip Code

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                              Proof of Claim                              page 1

**Part 2:**

| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: |
|---|---|---|

| 7. | How much is the claim? | $ 136,530.74 | **Does this amount include interest or other charges?**<br>☐ No<br>☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|---|

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>**Money Loaned** |
|---|---|---|

| 9. | Is all or part of the claim secured? | ☐ No<br>☒ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br><br>☒ Real estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.<br>☐ Motor vehicle<br>☐ Other. Describe: **2908 YORKTOWNE DR, LAPLACE, LA 70068**<br><br>**Basis for perfection:** Recorded Mortgage<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property: $<br>Amount of the claim that is secured: $ 136,530.74<br>Amount of the claim that is unsecured: $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition: **$0.00**<br><br>Annual Interest Rate (when case was filed) 9.9%<br><br>☐ Fixed ☒ Variable |
|---|---|---|

| 10. | Is this claim based on a lease? | ☒ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____ |
|---|---|---|

| 11. | Is this claim subject to a right of setoff? | ☒ No<br>☐ Yes. Identify the property: _____ |
|---|---|---|

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?  A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No ☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|---|
| | | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ |

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   1/12/2016
                   MM / DD / YYYY

/s/ Jason R. Smith
    Signature

**Print the name of the person who is completing and signing this claim:**

| Name | | | |
|---|---|---|---|
| | Jason | R. | Smith |
| | First name | Middle name | Last name |
| Title | Dean Morris, L.L.C. Attorneys for Creditor | | |
| Company | Bayview Loan Servicing, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1505 North 19th Street | | |
| | Number          Street | | |
| | Monroe, LA  71201 | | |
| | City     State     ZIP Code | | |
| Contact phone | 318-388-1440 | Email ljacob@creditorlawyers.com | |

## Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 15-12283 | Principal balance: | $129,414.87 | Principal & interest due: | $0.00 | Principal & interest: | $1,193.26 |
| Debtor 1: | Renell Manuel | Interest due: | $0.00 | Prepetition fees due: | $0.00 | Monthly escrow: | $0.00 |
| Debtor 2: | N/A | Fees, costs due: | $0.00 | Escrow deficiency for funds advanced: | $0.00 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 4339 | Escrow deficiency for funds advanced: | $0.00 | Projected escrow shortage: | $0.00 | Total monthly payment: | $1,193.26 |
| Creditor: | Bayview Loan Servicing, LLC | Less total funds on hand: | $0.00 | Less total funds on hand: | $0.00 | | |
| Servicer: | Bayview Loan Servicing, LLC | Other: Deferred Principal | $7,115.87 | Other: | $0.00 | | |
| Fixed accrual/daily simple interest/other: | Fixed Accrual | Total Debt: | $136,530.74 | Total Prepetition Arrearage: | $0.00 | | |

### Part 5: Loan Payment History from First Date of Default

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

Eliana ⌐ᴊFrancesch, Clerk of Court
Parish of St. John the Baptist

# 0271700

Recorded On: 12/28/2006  09:46 A

When recorded, return to:
CITIFINANCIAL CONSUMER
SERVICES, INC.
1512 W AIRLINE HWY
LAPLACE        LA  70068

## MORTGAGE

ON THIS    22nd    day of    December                    ,  2006  , before me.
_____ , a Notary Public in and for the Parish of
_____ , State of Louisiana, and in the presence of the undersigned witnesses, appeared
RENELL KING MANUEL AND ERROL FLINN MANUEL                         2301
                                                                 6912 (herein "Borrower").
and the Mortgagee, CITIFINANCIAL CONSUMER SERVICES, INC. .
a corporation organized and existing      under the laws of      Maryland            , whose
permanent mailing address is 1512 W AIRLINE HWY    LAPLACE        LA  70068
(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U. S. $    137,168.05        , with
interest on the outstanding principal balance at the rate of      9.90      percent per annum, as the same may be
modified from time to time in accordance with the note, if applicable, which indebtedness is evidenced by Borrower's
note dated 12/22/2006 paragraphed "Ne Varietur" by me, Notary, for identification herewith and delivered to Lender.
and extensions and renewals thereof (herein "Note"), which Note provides for monthly installments of principal and
interest payable each month, beginning 01/28/2007 , with the balance of the indebtedness, if not sooner paid, due and
payable on 12/28/2036 ;

TO SECURE to Lender the repayment of the indebtedness of principal and interest evidenced by the Note; the
payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this
Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby
mortgage and hypothecate to Lender the following described property located in the Parish of
ST JOHN THE BAPTIST , State of Louisiana:

SEE ATTACHED EXHIBIT A

which has the address of    2908 YORKTOWNE DR              ,   LAPLACE
Louisiana   70068           (herein "Property Address");

LA 35211-8 12/2006     **Original(Recorded)     Copy(Branch)     Copy(Customer)**          Page 1 of 5

RENELL KING MANUEL    ERROL FLINN MANUEL                                    12/22/2006

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage and hypothecate the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

RENELL KING MANUEL   ERROL FLINN MANUEL                           12/22/2006

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.**
Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the
Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit
in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the
declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations
of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this
Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then
Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including
reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage
insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to
maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with
Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become
additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of
payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing
contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property,
provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to
Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with
any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby
assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a
lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or
modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of
Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in
interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for
payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the
original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy
hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or
remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers** . The covenants and agreements
herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and
Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and
several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only
to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is
not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder
may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the
Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's
interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to
Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail
addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as
provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such
other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this
Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the
jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this
Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such
conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting
provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein,
"costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of
execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home
rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's
option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights,
claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with
improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest
in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural
person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums
secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as
of the date of this Mortgage.

RENELL KING MANUEL    ERROL FLINN MANUEL                                    12/22/2006

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may cause the Property to be seized and sold under either ordinary or exectory process, with or without appraisement, to the highest bidder for cash. Borrower hereby confesses judgment in favor of Lender and any future holder of the Note in the full amount of all sums secured by this Mortgage, including, but not limited to, attorneys' fees of 25% of the sums due under the Note.**

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) entry of a judgment by a Court enforcing this Mortgage or (ii) issuance of a writ of seizure and sale pursuant to court order if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all cost of recordation, if any.

**21. Vendor's Lien Mortgage.** If Lender is a savings and loan association, the Note and other sums secured by this Mortgage shall be secured by a vendor's lien and privilege on and against the Property pursuant to the provisions of Louisiana Revised Statutes, Title 6, Section 833.

**22. Waiver of Homestead.** Borrower and Borrower's spouse, if any, hereby waive all right of homestead exemption in the Property.

**23. Mortgage and Conveyance Certificates.** The production of Mortgage and conveyance certificates is waived by Lender and Borrower, who release me, Notary, from all liability for non-production.

**24. Late Charge.** Borrower shall pay to Lender a late charge of   5.0 % of any monthly installment of principal and interest as provided in the Note not received by Lender within  10  days after such installment is due. The late charge shall be not less than U.S. $     0.00  and not more than U.S. $  9,999.00  .

**25. Marital Status of Borrower.** The marital status of Borrower is:
Name(s) of spouse and/or former spouse(s):          MARRIED ONCE AND TO EACH
                                        OTHER
**26. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

RENELL KING MANUEL   ERROL FLINN MANUEL                                    12/22/2006

As used in this paragraph 26, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 26, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

THUS DONE AND PASSED, on the _22nd_____ day of _December_____, _2006_, before me, the undersigned Notary Public, qualified in said State and Parish, and in the presence of _____
        Thomas Williams
_____ and _Catherine J Harris_____, the undersigned competent witnesses who have signed with Lender, Borrower and me, the said Notary, after due reading of the whole.

Witnesses:

_____                    _____
        Signature                                         -Borrower
    Thomas Williams                           Renell King Manuel
      PRINTED NAME

_____                    _____
        Signature                                         -Borrower
    Catherine J. Harris                       Errol Flinn manuel
      PRINTED NAME

Lender:
By: _____                _____
                                             Notary Public Signature
    Kathy M Hesse                           Michelle L. Sweeney-N.O. #58124

                                            _Michelle L Sweeney_____
                                                   PRINTED NAME

                                            _58124_____
                                                   Notary ID #

LA 35211-8  12/2006    **Original (Recorded)    Copy (Branch)    Copy (Customer)**                Page 5 of 5
                        [Space Below This Line Reserved For Lender and Recorder]

## ADJUSTMENT OF TERMS AGREEMENT

| BORROWER: (Name and Address) | LENDER: (Name and Address) | Account No. |
|---|---|---|
| RENELL KING MANUEL<br>ERROL MANUEL<br>PO BOX 2752<br>LAPLACE LA 70069 | CITIFINANCIAL SERVICING LLC<br>1033 E. 23RD ST. SUITE 7<br><br>FREMONT  NE  68025 | 200381 |
| | | Date<br>12/16/2013 |

This Adjustment of Terms Agreement ("Agreement") is made this **12/16/2013**  (the "Effective Date") by and between Borrower and Lender to amend and supplement the Disclosure Statement, Note and Security Agreement, or Note, as applicable, (the "Note"), and applicable riders, if any, executed by Borrower dated **12/22/2006** in the original principal amount of $ **137,168.05**.

Borrower acknowledges that Lender is either the holder and owner of the Note, or the servicer of the Note with authority to amend the terms of the Note.

[x] If checked, the Note is secured by real and/or personal property pursuant to a Mortgage, Deed of Trust, Deed to Secure Debt or other security agreement (the "Security Instrument") dated **12/22/2006**. Said Security Instrument conveys the real and/or personal property described in such security instrument (the "Property").

Borrower now requests to extend and rearrange the time and manner of repayment of the Note and to extend and carry forward the lien(s) on the Property, if any. Lender has agreed to Borrower's request.

For and in consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Acknowledgement of Principal Balance: Borrower acknowledges that as of the Effective Date and except for the additional amounts described in paragraph below, the amount payable under the Note and secured by the Security Instrument, if any, is $ **133,986.62** ("Unpaid Principal Balance").

The Borrower acknowledges and agrees that in addition to the Unpaid Principal Balance described above, Borrower is currently obligated for additional charges in the amount of $ **4,857.90** herein referred to as the "Deferred Amount." This amount could include accrued and/or deferred interest advances made by Lender for real estate taxes and/or hazard insurance premiums ("Escrow Advances"), appraisal fees, attorney's costs and other legal fees if any, and any other unpaid fees that may have accrued under the terms of Note. The Deferred Amount has accrued or been incurred under the terms of the loan documents and/or Security Instrument or under the terms of this Agreement.

The Deferred Amount is in addition to the Unpaid Principal Balance. The Deferred Amount shall continue to be due and owing by Borrower in accordance with the terms of the Note, the Security Instrument, and this Agreement; provided however, that for so long as Borrower makes principal and interest payments in a timely manner and ultimately pays the Deferred Amount to the extent obligated under the terms of Note and Security Instrument, Lender will not seek to enforce the right to collect under the Note or Security Instrument solely for the failure to pay the Deferred Amount. If not sooner demanded, the Deferred Amount shall be due and payable upon the earlier of voluntary payoff or the Revised Maturity Date set forth in Section 2 below. In addition to the Original Principal Balance and Deferred Amount, Borrower is also responsible for any unpaid late fees, which are reflected on the monthly billing statement.

2. <u>Repayment Terms</u>: Borrower promises to pay the Unpaid Principal Balance, plus interest, to the Lender according to the following terms:

| | |
|---|---|
| Temporary Interest Rate | 5.00 % |
| Temporary Interest Rate Start Date | 12/16/2013 |
| Temporary Monthly Payment<br>(not including monthly insurance premiums or escrow, if applicable) | $ 804.13 |
| Due Date of First Temporary Monthly Payment | 12/28/2013 |

After the Temporary Interest Rate expires, Borrower agrees to pay the remaining unpaid balance, plus interest, to the Lender according to the following terms:

| | |
|---|---|
| Restored Interest Rate | 9.90 % |
| Restored Interest Rate Effective Date | 10/29/2014 |
| Restored Monthly Payment<br>(not including monthly insurance premiums or escrow, if applicable) | $ 1,193.26 |
| Due Date of First Restored Payment | 11/28/2014 |
| Revised Maturity Date | 12/28/2038 |

The Revised Maturity Date is based upon the principal balance projected to exist at the time the Temporary Interest Rate expires and the Restored Monthly Payment, and assumes Borrower makes timely payments as scheduled without future modification of the remaining loan terms. All amounts still owed by Borrower under the Note and Security Instrument, including any unpaid Deferred Amounts under this Agreement or any prior Adjustment of Terms Agreement(s), are due and payable on the Revised Maturity Date. Borrower will be required to pay the past due amounts in order to bring the account current.

3. Additional Terms:

a. If the Note is a precomputed loan, it is hereby converted to an interest bearing loan, which means simple interest will accrue on the Unpaid Principal Balance each day until the loan is paid in full.

b. If the Note is a variable rate loan, it is hereby converted to a fixed rate loan and the payment and interest rate will not increase or decrease other than as provided for in this Agreement, for the remainder of the life of the loan.

c. By executing this Agreement, Borrower waives any rate reduction to which Borrower may have otherwise been entitled under the terms of the Note, any Rate Reduction Rider, or similar rider to the Note.

d. Although the loan has been modified and the original loan term has been adjusted, this does not change the amount of coverage or terms of the insurance originally written in connection with Borrower's loan. For those who purchased a monthly insurance product, the monthly premium will be added to the monthly loan amount described in paragraph 2 and will be indicated on the monthly statements. Purchased insurance coverage remains in force according to the original certificate or policy issued regardless of any rescheduling and/or adjustment of loan payments or extension by Lender. Further, the insurance may not cover as much of the debt and/or loan payment as it might have before the loan was rescheduled, adjusted or extended and the insurance may expire before the loan is paid in full.

e. If Borrower currently participates in automated payments, Lender may continue automatic drafts for the payment amount agreed to under the original Note unless Borrower requests that Lender update the automatic draft to withdraw the temporarily lower payment agreed to by the parties in this Agreement. Borrower may be required to re-enroll in automated payments if Borrower wishes to make the payments under this Agreement automatically. If Borrower is enrolled in automated payments through the Lender, the amount of the automatic draft contained in the payment draft will automatically increase upon the scheduled increase in the loan payment as described in this Agreement.

f.  It is the intention of the parties that all liens and security interests described in the Security Instrument, if
any, are hereby renewed and extended until the indebtedness evidenced by the Note, as renewed,
modified and extended hereby has been fully paid. Lender and Borrower agree that such extension,
renewal, amendment, modification, or rearrangement shall in no manner affect or impair the Note or the
lien and security interests securing the same, if any, the purpose of this Agreement being simply to
extend, modify, amend or rearrange the time and manner of payment of the Note and the indebtedness
evidenced thereby, and to carry forward all liens and security interests securing the Note, if any, which
are expressly acknowledged by the Borrower to be valid, subsisting and in full force and effect so as to
fully secure the payment of the Note. The Borrower expressly waives the benefit of any and all statutes
of limitation which might otherwise inure to the Borrower's benefit, or be in any way applicable to the
Borrower's obligations under the terms of any and all instruments described herein.

g.  As amended hereby, the provisions of the Note and Security Instrument, if any, shall continue in full
force and effect, and the Borrower acknowledges and reaffirms Borrower's obligations thereunder. In the
event of an inconsistency between this Agreement and the terms of the Note and Security Instruments, if
any, this Agreement shall govern. Nothing in this Agreement shall be construed to be a satisfaction or
release in whole or in part of the Note and Security Instrument, if any. Except as specifically provided for
in this Agreement, the Note and Security Instruments, if any, will remain unchanged and the Borrower
and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by
this Agreement. Any default by the Borrower in the performance of its obligations under this Agreement
shall constitute a default under the Note and Security Instrument, if any, and shall allow Lender to
exercise all of the remedies set forth in the Note and/or Security Instrument.

h.  In the event the Restored Interest Rate Effective Date is scheduled to occur later than the original
maturity date of the Note, the post-maturity rate prescribed in the Note will be applied in accordance with
the Note and the restored terms will cease as of the date of the original maturity date of the Note. In no
event will the Borrower's interest rate be higher than the current effective rate under this agreement.

i.  Borrower acknowledges that the monthly payments on the Note, as modified and set forth in this
Agreement, do not include any required escrow payments for taxes and insurance or other payments.
Borrower acknowledges and agrees that in the event that Escrow Advances are included in the amount
owed set forth in this Agreement and such Escrow Advances are returned to Lender for any reason, then
the amount of such Escrow Advances returned to Lender may be applied to Borrower's escrow account,
to reduce the amount of the Unpaid Principal Balance, and/or to reduce the amount of the Deferred
Amount, at Lender's sole discretion, regardless of whether those Escrow Advances are placed in the
Unpaid Principal Balance or in the Deferred Amount under this Agreement.

j.  Nothing in this Agreement shall be construed to impose personal liability to repay any obligation under
the Note, as modified by this Agreement, on any Borrower whose obligations have been discharged in
Bankruptcy.

k.  Borrower acknowledges that the Deferred Amount set forth above may not be reflected in the loan
amount reported by Lender to any credit reporting agency or reported as part of the balance on any
receipt or statement issued by Lender, but nevertheless, Borrower acknowledges that such Deferred
Amount is due and payable as set forth above.

l.  No Oral Agreements: The written Loan Agreements, including this Adjustment of Terms Agreement,
represent the final agreements between the parties and may not be contradicted by evidence of prior,
contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements
between the parties.

Borrower RENELL KING MANUEL

Borrower ERROL MANUEL

LENDER

By _Brandi Patmuedy_

**Please sign and date below:**

Electronically Signed on 12/26/13 12:12:03 PM by Renell Manuel

Cardholder's Signature    **Sign**    Please Note: You must first sign the PDF before you can submit. Once you press the "Sign" button to the left, the "Submit" button will appear below. Press the "Submit" button to send the form back to Citi.

THIS ELECTRONIC SIGNATURE CONSTITUTES OUR CARDHOLDERS UNIQUE IDENTITY CAPTURED THROUGH OUR SECURE ONLINE BANKING ENVIRONMENT. A FALSE DECLARATION TO A FEDERALLY INSURED FINANCIAL INSTITUTION MAY BE A VIOLATION OF FEDERAL AND/OR STATE LAW.

Submit

Received :December 26, 2013 12:13:04 PM CST

| Borrower(s) (Name and mailing address) | Lender (Name, city, state) | Account No. |
|---|---|---|
| RENELL KING MANUEL<br>ERROL FLINN MANUEL<br>2908 YORKTOWNE DR<br>LAPLACE LA 70068 | CITIFINANCIAL CONSUMER<br>SERVICES, INC.<br>1512 W AIRLINE HWY<br>LAPLACE    LA   70068 | 201301<br>**Date of Loan**<br>12/22/2006 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate.<br>**10.25 %** | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower.<br>$ **296,400.74** | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf.<br>$ **133,172.86** | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled.<br>$ **429,573.60** |
|---|---|---|---|

**Payment Schedule:**

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 360 | $ 1,193.26 | MONTHLY BEGINNING  01/28/2007 |
| | $ | |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Security:** If checked, Borrower is giving a security interest in:
☐ Motor Vehicle   ☐ Mobile Home
☒ Real Property   ☐ Other

**Late Charge:** If any payment is more than 10  days late, Borrower will be charged a late fee of  5.0  % of the amount of the payment due.

**Prepayment:** If Borrower pays off early, Borrower:
☐ will not ☒ may  have to pay a penalty; and will not be entitled to a refund of part of the finance charge.

* Does not include any insurance premium.

Additional Information:

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL | POINTS | DATE CHARGES BEGIN | DATE CHARGES BEGIN |
|---|---|---|---|---|
| $ 1,193.26 | $ 137,168.05 | $ 3,995.19 | 12/28/2006 | 12/28/2006 |

**Required Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid . The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less.

If the collateral securing the credit is a motor vehicle (including a recreational vehicle, boat, or movable mobile home), Borrower must provide collision and comprehensive casualty insurance in an amount sufficient to satisfy the unpaid balance of the loan or equal to the value of the collateral, whichever is less. All such policies and renewals thereof must name Lender as loss payee and must be maintained by Borrower, until the credit is repaid in full. Borrower may obtain a new insurance policy or provide an existing policy from any insurer that is acceptable to Lender. If Borrower obtains the Automobile Physical Damage Insurance at Lender's office, Borrower acknowledges that such insurance (1) may cost more than insurance that is available from another insurer, (2) will only protect Lender's interest in the collateral and does not protect Borrower's interest, and (3) does not protect Borrower from claims by other persons.

Any such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

I/We request the following insurance:

| Cost Premium: | Insurance Type: | Insurance Term (in mos.) | |
|---|---|---|---|
| $    NONE | Modified Automobile | | First Borrower's Signature     Date |
| $ | Single Interest | | Second Borrower's Signature     Date |
| $ | | | |

**Optional Insurance Disclosure:**
Borrower is not required to purchase optional insurance products, such as:  Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: | |
|---|---|---|---|
| $   NONE | | | First Borrower's Signature     Date |
| $   NONE | | | Second Borrower's Signature     Date |
| $   NONE | | | |

(* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1)  the Lender's receipt of Borrower's written request for termination;
(2)  on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3)  termination pursuant to the provisions of the insurance certificate;
(4)  payment in full of Borrower's Loan;
(5)  death of Borrower.

Borrower's Initials

| LA 25795-15 3/2006 | Original (Branch)    Copy (Customer) | Page 1 of 3 |
|---|---|---|

Case 15-12283   Claim 11-1 Part 2   Filed 06/01/16   Exhibit redacted loan docs006

**TERMS:** In this Disclosure Statement, Note and Security Agreement ("Note" or "Document") "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, which includes any Points shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the Rate of Interest of   09.8964 % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the   N/A   month anniversary of the Date of Loan shown above, the Rate of Interest applicable to the remaining unpaid principal balance shall decrease to N/A   % per annum.

Any amount shown above as Points has been paid by Borrower as fees and any amount shown above as a Buydown Fee has been paid by a party other than the Borrower as a Buydown Fee. These amounts are considered a prepaid charge and are in addition to interest calculated at the above Rate(s) of Interest. Any Points or Buydown Fee are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, prepaid Points and/or Buydown Fees will not be refundable to Borrower.

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full, unless this loan is subject to a call provision as indicated, in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) late charges and monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender, at its option, may collect interest from and after maturity upon the unpaid Principal balance at either the maximum rate permitted by the then applicable law or the Rate of Interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement.

**PREPAYMENT:** Borrower may make a full or partial prepayment of the unpaid Principal balance at any time (check applicable box):

☐ If this box is checked, Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

☒ If this box is checked, Borrower prepays the entire outstanding Principal amount of this loan during the first three (3) years from the date of the loan, Lender may charge Borrower a prepayment penalty equal to a percentage of the amount prepaid as follows: for prepayment in full within one year of the date of the loan, 3%; within two years, 2%; and within three years, 1%. Upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent payments on the loan, but may reduce the number of such payments.

Borrower understands if the terms of this paragraph provide for a prepayment penalty, such terms do not apply to a renewal or refinancing of this loan by Lender, nor to the prepayment of this loan from the proceeds of any loan made in the future by Lender to Borrower. No prepayment charge will be collected if the loan is accelerated due to Borrower's default or Lender's exercise of any due on sale clause in the Mortgage securing this obligation.

**SECURITY:** Borrower's loan is secured by a Mortgage or Deed of Trust of even date on real property which requires Lender's prior written consent to a sale or transfer of the encumbered real property located at
2908 YORKTOWNE DR  LAPLACE, LA  70068                                          . See the Mortgage or Deed of Trust
for terms applicable to Lender's interest in Borrower's real property ("Property").

**INSURANCE:** If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

**NSF CHARGES:** If a check, negotiable order of withdrawal or share draft is returned for insufficient funds or insufficient credit, Lender may charge 5% of the check or $  25.00   , whichever is greater.

**LATE CHARGE:** If Borrower fails to pay any scheduled Payment within  10  days of its due date, Borrower agrees to pay a late charge of   5.0 % of the unpaid portion of the Payment due. Lender may, at its option, waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment.

**LOAN CHARGES:** If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

**DEFAULT:** Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. Borrower defaults in the performance of any terms, conditions or provisions of any mortgage or deed of trust securing the payment of this Note or any other mortgage or deed of trust on the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once. Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement. If this debt is referred for collection to an attorney not a salaried employee of the Lender, Lender shall be entitled to collect attorney's fees not to exceed 25% of the unpaid debt. Lender, at its option, may collect interest from and after the final payment date upon the then unpaid Principal amount of this Note, at (a) the maximum rate permitted by the then applicable law or (b) the Rate of Interest prevailing under this Disclosure Statement, Note and Security Agreement, as shown on page one.

**LAW THAT APPLIES:** Louisiana and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

**OTHER RIGHTS:** Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular, and references to the masculine gender may be read to apply to the feminine gender.

This Disclosure Statement, Note and Security Agreement shall be the joint, several and in solido obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors and assigns. Borrowers, endorsers, sureties and guarantors, to the extent permitted by law, severally (i) waive presentment for payment, notice of nonpayment, protest, notice of protest and diligence in bringing suit against any party hereto; (ii) consent that time of payment may be extended after maturity without notice; and (iii) waive all benefit of valuation, appraisement and homestead or other exemption laws now in force or hereafter passed, including stay of execution and condemnation. Borrowers hereby confess judgment.

Borrower's Initials

LA 25795-15 3/2006                    Original (Branch)      Copy (Customer)                                          Page 2 of 3

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

AUTHORIZATION TO USE CREDIT REPORT: By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

The following notice applies only if this box is checked. ☐

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

WITNESSES:

SIGNED:

RENELL KING MANUEL                    -Borrower (Seal)

ERROL FLINN MANUEL                    -Borrower (Seal)

-Borrower (Seal)

CITIFINANCIAL CONSUMER SERVICES, INC.

By: _____ (Name and Title)   12/22/2006  10:24:29

Ne Varietur

For Identification with an Act of Mortgage passed before me this _____ 22 ND _____ day of December , 2006

at LAPLACE , Louisiana

Notary Public

Notary Public of Parish ST. JOHN THE BAPTIST , Louisiana

Michelle L. Sweeney N.C. #58124

SECURITY INTEREST OF NONOBLIGOR Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and pow of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

Signature _____ (Seal)   Date _____

Signature _____ (Seal)   Date _____